Wilds, J.
This is a question of great importance to the commercial part of the community. It involves the inqiiiry how far the holder of a bill, or note, may extend indulgence to the acceptor, or maker, without discharging the indorsers. The doctrine on this subject is stated to be, that if the holder of a: bill, or note, receive any part of the money due, from the acceptor, or maker, he shall never resort to the drawer, o'r indorser, because it is considered as-giving the whole credit to the acceptor, or maker, and discharging the drawer, or indorser. 1 Ld. Raym. 743. 2 Str. 745. 1 Bos.' & Pul. 656. This, when qualified with the proviso, “ that timely notice be not given to the drawer that the bill is not paid,” is a rule established in good sense, and consonant to-the undertaking of the parties. The maker and several indorsers of a bill of exchange, and'' the indorsers of a note, become only provisionally guarantees for the payment of the money : it is the undertaking of the parties, ánd forms part of the contract, tliat the acceptor shall be first re-' sorted to, and it is only in case of his failure to comply with his un-” dertaking, that the drawer! or indorser, is to be called on. In ordinary cases, it is not only necessary that the accepter should fail to comply, but the’earliest information practicable thereof given to-the drawer; and this to enable the drawee to remove his funds,which the policy of the doctrine presumes to be in the acceptor’s hands. Any circumstances, therefore, as receiving part from the acceptor, without-informing the drawer-that- the balance-is unpaid or giving time to the acceptor, after the bill has fallen due, shews on whom the holder relies, and discharges the drawer-, and several indorsers. To' apply this doctrine tef the case under consideration : Had the plaintiff, when this note became due, made the arrangements which have taken place, with Gairdner; had he done' less, had he even given-time to Gairdner, and all this without the knowledge or assent of the defendants, the indorsers, they would unquestionably have been discharged. But this extreme caution, this extraordinary diligence in the holder of a bill, is only required until it is ascertained whether the acceptor, the person first liable, complies or not with his engagement!- When he fails to do so, and the drawer is advertised of the failure, the situation of the parties become changed. The drawer is put on his guard, and may pro» vide for his indemnity, by withdrawing his effects from the accbpt! or’s hands. He becomes then absolutely liable; the holder then is not bound to proceed against the acceptor, but may resort immediately to the drawee. In tho present case, GairdnerVnote- was re>. *24 gularly protested. The plaintiff, by this step, informed the indors. era that he considered them as liable ; and they were authorized, if they saw proper, to proceed against the makers of the note. A forbearance after this, to press Gairdner, receiving part from him, or any thing short of a satisfaction, or- what would be esteemed equal to it, would discharge the defendants. Thus we find in the case of Walwyn v. St. Quintin, cited in the argument, 1 Bos. & Pul. 653, the holder, after protest, received part of the money due on-the bill from one of the indorsers, and agreed not to press the acceptor, and yet was allowed to recover from the drawer ; it being detet mined, that an agreement not to press the acceptor, whom, af. ter protest, he was not bound to pursue, did not prevent the drawer from proceeding, if he saw proper: and receiving part from an in-dorser, is no discharge to the acceptor, who is first liable, being to his advantage, as lessening the sum he was liable to pay. An in-dorsee cannot compromise, or bitid himself not to sue the acceptor, and then resort to his indorser, because by his conduct he has prevented the indorser from indemnifying himself by an immediate resort to the acceptor. In the present case, if the plaintiff made any agreement with Gairdner, which would have prevented the defendants from proceeding against him immediately, after protest, he has discharged them : but fairly receiving part of the money from Gaird-ner, or m dd.ig arrangements for receiving the whole, without actu ally receiving it, is not sufficient. Receiving part, is not taking security for the whole. Ib. 057. In the case of English v. Darley, 2 Bos. & Pul. 61, the plaintiff brought his action against the in-tlorser of a bill of exchange ; also, against the acceptor. He puf-sued the acceptor to judgment, took out execution, received £100 in part payment of the bill, a id took a boud and warrant of attorney as security for the balance. He was afterwards prevented from proceeding against the indorser, and for the best of reasons: by his accommodations with the acceptor, he had deprived the indorser of his recourse upon him for indemnity. So, for the same reason, a discharge or accommodation, with a prior indorser, prevents a recourse upon a subsequent one ; although the converse of the proposition is otherwise.
In the case of the Executors of Moles v. Dewlin, the defendants drew a bill of exchange, which was indorsed to the plaintiff, on Atkinson, by whom it was accepted. Upon his nonpayment, the defendants were informed of it. Atkinson was afterwards arrested, imprisoned, and finally discharged by the holder, all with the know, ledge of the drawer, who was held to be still liable; as it was in- *25 íerred from his knowledge and conduct, that he virtually assented to the holder’s proceedings: And it was said in this case by Lord Alvanly, O. J. a holder is not bound to seek his remedy against the acceptor, but he müst take care that he dCfes not give the acceptor á defence against the drawer. 8 Bos. and P. 363. From these high authorities, it clearly restilts, that after protest, the drapers of a bill, or the indofsérs of a note, become immediately and abso. lutely liable. That laelies in the holder, which before would die-charge the drawer, is no longer imputable to him. Thai nothing but absolute satisfaction, or suC'h arrangements made with the acceptor, as will prevent the drawer having immediate recourse upori him, if he sees proper, will discharge the drawer from his liability; In the present case, if Gairdner’s testimony were believed, there would be an end of the inquiry. But laying that out of the question, as it is probable the jury did, it will appear that Fiddy, the plaintiff, acknowledged he had received those papers as collateral Security, but had forgotten to lodge one of them in the bank for collection, and that he manifested some alarm whe'n he discovered hoyf small the balance was, that Was due on Stephens’ bond. Is taking' a collateral security for part of the debt a satisfaction for the whole? Did any act, or arrangement of the plaintiff, prevent the defendants from paying off this note, and immediately bringing suit against Gairduer ? I think not. But it is said that the defendant was lulled hito a belief that he should never be resorted td, and was prevented from indemnifying himself out of the wreck of Gaird-ner’s fortune, while it was in fits power. But I would ask upon whom did the law, in this case', impose vigilance ? After protest, unquestionably, on the defendants. It was not the plaintiff’s business to apprise them of their duty; they were bound to' know it. It was sufficient if he did not interpose any legal impediment to their proceeding against Gairdner. Wé find, that as long as duty imposed vigilance'on him, he was guilty of no laches.- The liabilities of the several parties in these kind of mercantile transactions, are now wisely settled, and well known ; and Ido think we should-introduce an innovation, which would be seriously felt by the commercial part of the community, were we to vary fiom the decisions heretofore made. For these reasons, I think, the verdict in thief case should not be disturbed.